803 So.2d 1140 (2001)
Clyde E. JOHNSON, Jr.
v.
SOUTHERN UNIVERSITY and A & M College.
No. 2000 CA 2615.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
*1142 Dan M. Scheuermann, Baton Rouge, Louisiana, for Plaintiff/Appellant, Clyde E. Johnson, Jr.
Winston G. Decuir, Sr., Linda Law Clark, Baton Rouge, Louisiana, for Defendant/Appellee, Board of Supervisors for Southern University and A & M College.
BEFORE: GONZALES, KUHN, and CIACCIO[1], JJ.
KUHN, Judge.
Plaintiff, Clyde E. Johnson, Jr., appeals the trial court's dismissal of his petition against defendant, Southern University and Agricultural and Mechanical College ("Southern University"), on the grounds that it fails to state a cause of action. Following Southern University's action of restricting his class assignments, Johnson sought judicial review under the Louisiana Administrative Procedure Act ("LAPA"), La.R.S. 49:950 et seq. In considering whether Johnson is entitled to judicial review of the university's decision to restrict the classes that he teaches, we address whether the university's actions constitute a rule or an adjudication within the meaning of the LAPA. In making that determination, we consider 1) whether a university violates a tenured professor's due process rights by changing his class assignments without holding a hearing prior to imposing the change, and 2) whether a change in class assignments constitutes an adverse economic decision sufficient to support a claim that the university has retaliated against the professor in violation of his free speech rights. We affirm.

I. PROCEDURAL AND FACTUAL BACKGROUND
Johnson filed suit against Southern University seeking judicial review pursuant to La.R.S. 49:964. In his petition, Johnson alleges he is a tenured professor with Southern University and has served as a professor of biology since 1970. He states that Dorothy Thompson became chairperson of the Department of Biological Sciences on August 17, 1998, and that prior to that date, he and other Southern University faculty members had petitioned to reopen the search for a new chairperson due to their belief that Thompson was not qualified for the job. Johnson asserts that his opposition to Thompson caused animosity towards him from Thompson and others in the department.
Johnson further alleged that during early 1999, four students filed unfounded grievances concerning his teaching, testing and grading methods. He asserts that *1143 without investigating the veracity of these complaints, Brenda Birkett, Vice Chancellor for Academic Affairs, issued a directive that restricted his teaching responsibilities to consist of multi-sectioned classes only. Johnson complains that the directive effectively restricts him from teaching physiology courses.
Johnson asserts he has sought a rescission of the directive through university grievance procedures and has requested a hearing on the issue to no avail. He states that the Vice Chancellor, the Chancellor, and the System President denied his requests to have the directive rescinded and that the Board of Supervisors for Southern University ("the Board") also declined his request for a hearing.
Thus, Johnson contends that Southern University has violated his due process rights by not affording him a hearing before depriving him of the privilege of teaching physiology courses. Johnson also claims that Southern University has retaliated against him for challenging Thompson's qualifications, thereby violating his right to free speech.
In response to Johnson's petition, the Board filed a motion to dismiss, urging that the petition fails to state a cause of action upon which the court could grant relief. The Board also asserted that Johnson has no right to judicial review of an internal personnel decision of the Board, contending that the LAPA is not applicable.
After a hearing, the trial court granted the Board's motion to dismiss. The court reasoned that the university's decisions regarding teaching assignments are internal decisions not subject to judicial review and concluded that the petition failed to state a cause of action for which Johnson can seek redress.

II. JUDICIAL REVIEW UNDER LAPA
The LAPA, La.R.S. 49:950 et seq., provides a method of judicial review for agency action. It applies, however, only to certain actions taken by certain administrative agencies. Jones v. Southern University and A & M College System Through Bd. Of Supervisors, 96-1430 (La.App. 1st Cir. 5/9/97); 693 So.2d 1265, 1268. Section 963 of the LAPA provides for judicial review of the validity or applicability of agency rules, and Section 964 of the LAPA provides for judicial review of agency adjudications. Id. The Board's decision to uphold the teaching restriction that limits Johnson's class assignments to multi-sectioned classes does not constitute a rule or an adjudication within the meaning of the LAPA. Thus, for the following reasons, Johnson is not entitled to judicial review under the LAPA. The trial court properly dismissed plaintiff's suit because it did not have subject matter jurisdiction to review the Board's decision. Id at 1269.

A. Rule
Section 951(6) of the LPA defines a rule, in pertinent part, as follows:
"Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency ..., which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency.
Emphasis added.
Decisions regarding teaching assignments are matters pertaining to the internal management of a university. See Jones, 693 So.2d at 1268; Grace v. Board of Trustees for State Colleges and Universities, 442 So.2d 598, 601 (La.App. 1st Cir. 1983), writ denied, 444 So.2d 1223 (La. 1984). As such, the Board's decision to *1144 uphold the teaching restriction effecting Johnson's class assignments does not constitute a "rule" as defined by the LAPA.

B. Adjudication
A person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under the LAPA. La.R.S. 49:964(A). An "adjudication" is defined as an "agency process for the formulation of a decision or order." La.R.S. 49:951(1). A "decision" or "order" is defined in La.R.S. 49:951(3) as
[T]he whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing....
Thus, the LAPA provides for judicial review in an adjudication. An adjudication is a proceeding resulting in a decision or order. A decision or order is, for purposes of the LAPA, a disposition required by constitution or statute to be made only after notice and a hearing. Jones, 693 So.2d at 1269; Parochial Employees' Retirement System of Louisiana v. Caddo Parish Comm'n, Etc., 95-0243 (La.App. 1st Cir. 3/15/96), 676 So.2d 105, 107, writ denied, 96-0955 (La.5/31/96), 673 So.2d 1031.
In Matter of Carline Tank Services, Inc., 627 So.2d 669, 670 (La.App. 1 Cir. 1993), (on rehearing), this court further explained the process that should be employed in determining what type of action constitutes a "decision" or "order" under the LAPA:
[E]ither of two tests is applied to the facts of a particular case to determine whether an action is a "decision or order" and, therefore, appealable. The first test concerns whether the party aggrieved is claiming a constitutionally protected right, such as a liberty or property right. When governmental action deprives a party of such a right, procedural due process (encompassing the right to a hearing, notice record, and judicial review) applies. If no constitutionally vested right is at issue, one looks to the statutes to determine if the legislature has deemed the governmental action so important as to require a hearing on the record and notice thereof. (footnote omitted)
Accordingly, unless there is a constitutional or statutory provision requiring that Johnson be afforded a hearing prior to the Board's action addressing the teaching restriction, the Board's ruling is not a decision or order as defined by the LAPA, and thus, is not subject to judicial review under the LAPA.
Although there is no statutory provision requiring the Board to hold a hearing regarding restrictions on class assignments, Johnson asserts judicial review is required based on two constitutional bases. He contends that Southern University's actions have violated his constitutional right to due process of law by depriving him of the benefit of teaching physiology, a class that he is qualified to teach. He also contends that Southern University's actions constitute retaliation against him for his challenge to Johnson's qualification, depriving him of a liberty interest, his right to free speech.

1. Due Process
The Fourteenth Amendment to the United States Constitution provides, in pertinent part, "[n]or shall any State deprive any person of life, liberty or property, without due process of law...." Similarly, Article I, § 2 of the Louisiana Constitution provides that no person shall be deprived of life, liberty, or property, except by due process of law. To claim the protections of due process, a claimant *1145 must show the existence of some property or liberty interest which has been adversely affected by state action. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330, 334 (La.1980); Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 97-2119 (La.App. 1 Cir. 11/6/98), 722 So.2d 317, 322, writ denied, 98-2995 (La.12/9/98), 729 So.2d 583. Property interests are not created by the constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state lawrules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 722 So.2d at 322.
It is undisputed that both the federal and state constitutions protect a tenured professor's right to continued employment by requiring that certain procedural steps be followed before the termination of employment. See Rubin v. Lafayette Parish School Bd., 93-473 (La.App. 3d Cir.12/14/94), 649 So.2d 1003, 1009-1010; writ denied, 95-0845 (La.5/12/95), 654 So.2d 351; Gaulden v. Lincoln Parish School Bd., 554 So.2d 152, 155 (La.App. 2d Cir.1989), writ denied, 559 So.2d 126 (La. 1990); Olivier v. Xavier University, 553 So.2d 1004 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1279 (La.1990). In this case, Johnson has not been terminated and makes no claim that he has been deprived of any compensation. Thus, for Johnson to prevail, he would have to establish that he possessed a particular property interest in the class assignments that he held before Southern University restricted his assignments.
There are no statutes, regulations or cases supporting Johnson's claim that he possesses a property interest in his class assignments. Moreover, Johnson does not claim that his contract with Southern University hampered the discretion of university officials to revise his class assignments. Absent a contractual provision limiting Southern University's right to reassign Johnson's classes, Johnson has no property interest in his particular class assignments. This conclusion is supported by an overwhelming weight of authority addressing analogous situations. See Huang v. Bd. Of Governors of Univ. of North Carolina, 902 F.2d 1134, 1141-42 (4th Cir.1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); Childers v. Independent Sch. Dist. No. 1, 676 F.2d 1338, 1340-41 (10th Cir.1982) (tenured high school teacher had no property interest in vocational-agriculture teaching assignment under Oklahoma law); Sekor v. Board of Educ. of Ridgefield, 240 Conn. 119, 128-129, 689 A.2d 1112 (1997) (tenured teacher's constitutional rights do not include an entitlement to a particular teaching assignment). Also see Raposa v. Meade Sch. Dist. 46-1, 790 F.2d 1349, 1353 (8th Cir.1986) (non-tenured teacher has no property interest in a particular teaching assignment pursuant to South Dakota law); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir.1985) (reduction of graduate student's teaching duties is not a denial of a protected property interest under Texas law). These cases indicate that an administrative decision to reassign or transfer a particular employee absent a statutory or contractual provision to the contrary is left to the "unfettered discretion of [the employer]." Roth, 408 U.S. at 567, 92 S.Ct. at 2704.
Accordingly, based on the allegations of Johnson's petition, he has not been deprived of a property interest. Therefore, due process protections, such as a right to a prior hearing, do not apply. See Delta *1146 Bank & Trust Co., 383 So.2d at 334; Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 722 So.2d at 323.

2. Freedom of Speech
The First Amendment of the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Article I, § 7 of the Louisiana State Constitution provides, "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."
To prevail in a retaliation claim, a public employee must allege facts demonstrating that his speech involved a matter of public concern, that he has suffered an adverse employment action for exercising his right to free speech, and that the exercise of free speech was a substantial or motivating factor in the adverse employment action. See Harrison v. Parker, 31-844 (La.App. 2 Cir. 5/5/99), 737 So.2d 160, 163, writ denied, 99-1597 (La.9/17/99), 747 So.2d 565; Harrington v. Harris, 118 F.3d 359 (5th Cir.1997), cert. denied, 522 U.S. 1016, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997).
Addressing the allegations of Johnson's petition, we are unable to discern whether his speech involved a matter of public concern. But even if he could establish constitutionally-protected speech, he has not alleged facts sufficient to support a finding of an adverse employment action. Examples of adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands. Harrington, 118 F.3d at 365. Other actions that may have a chilling effect upon protected speech are not actionable. Actions such as "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures," while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation. Harrington v. Harris, 118 F.3d at 365 (quoting Dorsett v. Bd. Of Trustees for State Colleges & Universities, 940 F.2d 121, 123 (5th Cir.1991).) Accordingly, we conclude that Johnson has failed to allege facts sufficient to establish that he is entitled to a hearing based on a deprivation of a liberty interest.
Thus, the allegations of Johnson's petition do not establish that any constitutionally-protected rights have been affected by the Board's decision to uphold the restriction on his class assignments. Accordingly, the Board's decision does not constitute an "adjudication" within the meaning of the LAPA.

III. CONCLUSION
Because decisions regarding teaching assignments are matters pertaining to the internal management of a university, we find the Board's decision to uphold the restriction does not constitute a "rule" within the meaning of the LAPA. Also, because the Board's decision has not deprived Johnson of a constitutionally-protected liberty or property right and because there is no statute affording him a right to a hearing prior to a restriction being imposed on class assignments, the Board's decision to uphold the restriction does not constitute an "adjudication" within the meaning of the LAPA. Thus, Johnson did not allege facts sufficient to establish that he is entitled to judicial review under the LAPA, and the trial court lacked subject matter jurisdiction to review the Board's decision. The judgment of the trial court dismissing plaintiff's *1147 suit is affirmed. Costs of this appeal are assessed against Johnson.
AFFIRMED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.